# United States District Court

SOUTHERN  **DISTRICT OF**  IOWA

UNITED STATES OF AMERICA

v.

MARK ANTHONY SIEVERT

**CRIMINAL COMPLAINT**

CASE NUMBER: 3:12- MJ 96

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief:

**Count 1**

From on or about July 5, 2012 and continuing until September 14, 2012, in the Southern District of Iowa, the defendant, Mark Anthony Sievert, did use facilities of interstate and foreign commerce, that is, cellular telephones, to attempt to persuade, induce, and entice an individual who had not attained the age of 18 years, that is, a 15-year old girl, to engage in sexual activities for which a person could be charged with a criminal offense in violation of 18 USC § 2422(b)

**Count 2**

On or about July 19, 2012, in the Southern District of Iowa, the defendant, Mark Anthony Sievert, did knowingly attempt to employ, use, persuade, induce, and entice a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, in violation of 18 USC §§2251(a) & (e).

I further state that I a Special Agent with the Federal Bureau of Investigation and that this Complaint is based on the following facts:

See Affidavit attached and incorporated

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Jeffrey Huber, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

November 16, 2012            at    Davenport, Iowa
Date                                         City and State

Thomas J. Shields
Chief U.S. Magistrate Judge
Name & Title of Judicial Officer                 Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF COMPLAINT

I, JEFFREY S. HUBER, Special Agent, Federal Bureau of Investigation, being first duly sworn, hereby depose and state:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) currently assigned to the FBI Omaha Division, Quad Cities Resident Agency. This affidavit is based upon my involvement in the investigation of Mark Anthony Sievert, discussions with detectives of the Muscatine (Iowa) Police Department (MPD) and Louisa County Sheriff's Office (LCSO), and additional investigation conducted by MPD and LCSO. This affidavit is made in support of a criminal complaint charging Sievert, a white male born in 1972, with offenses under Title 18, United States Code, Sections 2251(a) and 2422(b), that is, Sexual exploitation of children and Coercion and enticement, respectively. This affidavit may refer to "text", "texts" and "texting" as verbs meaning to send text messages by cellular telephone or "text" may be a noun referring to a text message.

2. I have set forth only the facts that I believe are necessary to establish probable cause to conclude that Sievert has committed violations of Title 18, United States Code, Sections 2251(a) and 2422(b) and that these offenses occurred within the Southern District of Iowa.

3. On or about September 14, 2012, law enforcement from LCSO and the MPD were notified of a 15-year old female (hereinafter referred to as "Victim") who was a possible victim of sexual criminal activity, including sexual abuse and exploitation. The Victim resides with her biological mother (hereinafter referred to as "Mother") and Step-Father (hereinafter referred to as "Step-Father").

4. According to Mother and Step-Father, on or about the weekend of September 14, 2012, Mother became aware of text messages on Victim's phone between Victim and Sievert. According to Mother, the text messages were of the nature that made her believe Victim and Sievert had a sexual encounter. The text messages were sent by Sievert using his cellular telephone (hereinafter referred to as "Sievert's phone").

5. According to Mother and Step-Father, Mother and Step-Father confronted Sievert about the text messages and Sievert denied any sexual encounter. According to Mother and Step-Father, Mother and Step-Father confronted Victim about the text messages and Victim admitted having sexual intercourse with Sievert.

6. According to Mother and Step-Father, Victim turned off her cell phone while being confronted by Mother and Step-Father. According to Mother and Step-Father, the Victim's cell phone was password protected and Victim would not divulge the password. A friend of Mother's, removed the phone's SIM card and inserted another SIM card into the Victim's cell phone. This allowed the Victim's cell phone to be turned on without needing a password. According to Mother and Step-Father, Victim's cell phone was

accessed and Mother discovered a pornographic video of the Victim masturbating and other pornographic pictures of Victim on Victim's cell phone. According to Mother and Step-Father, with the assistance of the family friend, Mother saved the pornographic video and pictures to a Thumb Drive in order to secure evidence for law enforcement purposes.

7. Victim has been interviewed different times by different individuals including interviews involving your affiant, an investigator with LCSO, an investigator with MPD, and a forensic interview by a social worker at the Mississippi Valley Child Protection Center (CPC), Muscatine, Iowa. During these different interviews, Victim has given conflicting and contradictory versions of the activities she engaged in with Sievert. Victim has consistently stated that she loves Sievert. Victim has consistently stated that after Sievert and Victim met in person, they began communicating on the social internet web-site of Facebook. According to Victim, Victim has also communicated with Sievert via text messaging using her cell phone, which was surreptitiously provided to Victim by Sievert. Victim has stated consistently that some of the text messages between Sievert and Victim were inappropriate in nature. Some of the Victim's statements about text messages and sexual activity have been corroborated by your affiant as set forth, in part, below.

8. According to Victim, Sievert sent Victim a text message saying he wanted to have sex with Victim. Since the initial confrontation of Victim by Mother and Step-Father, Victim has consistently stated that she has had sexual intercourse with Sievert on multiple occasions.

9. During an interview by your affiant and an investigator with MPD on September 24, 2012, Victim stated she has had sexual intercourse with Sievert less than ten (10) times, but approximately up to seven times and that Sievert and Victim had oral sex with each other, and on one occasion, Victim and Sievert had anal sex, which Victim characterized as being really difficult. According to Victim, Sievert provided Victim with her cell phone and wanted Victim to keep the existence of the cell phone a secret from Victim's parents. In addition to Victim and Sievert exchanging sexually explicit text messages regarding their sexual encounters, at the request of Sievert, Victim sent Sievert pictures of Victim produced with her cell phone, including naked pictures of Victim. According to Victim, an attempt was made to send Sievert the sexually explicit video of Victim masturbating, but the video was too large to send using Victim's cell phone. In early October, Victim gave a letter to the FBI's victim-witness specialist meant for your affiant. Your affiant reviewed the letter. In it, Victim stated, in part, that she did not have sexual contact with Sievert and the text messages she received from him were meant for Sievert's ex-girlfriend.

10. According to Victim, Sievert is the one who provided her with her cell phone and would occasionally take possession of the cell phone for days at a time. According to Victim, Sievert had possession of her cell phone subsequent to the creation of the pornographic video and other pictures on the cell phone.

11. On September 25, 2012, a search warrant was obtained for the cell phone that was provided to the Victim by Sievert. On October 1, 2012 a forensic examination was

initiated on that phone. A review of the forensic examination was conducted and based on the review it was determined that between September 12, 2012 and September 14, 2012, there were numerous SMS text messages sent between the Victim's phone and Sievert's phone.

12. On September 14, 2012, a string of SMS text messages was sent between Sievert's phone and Victim's phone. During their communication there is a post from Sievert's cell phone: "I love u [Victim's first and middle names] with, all my heart and soul im gonna marry u and be together forever." Later in the string of SMS text messages, Sievert appears to post: "I love u [Victim's first and middle names] sievert mother of my child Anthony joe."

13. On September 14, 2012, a string of SMS text messages sexually explicit in nature were sent from Sievert to Victim using Sievert's phone and Victim's phone, respectively. During their communication SIEVERT texts, "My fingers still smell like u so I been smelnthem allorning." Later in their string of SMS text messages, Sievert texts, "I love u baby do u wann fuck." Sievert further says, "So u want Zues to lick that shit dry dont u.....U dont even like me licking u no more." Based on the investigation, Zues is Victim's family dog.

14. On October 29, 2012, your affiant has reviewed I Wireless records pertaining to Sievert's phone and Victim's phone. These records indicate Sievert's phone and Victim's phone are billed to I Wireless Customer "Mark Siebert." Your affiant believes "Siebert" is meant to be "Sievert" and is a typographical error because "Siebert" has the same address and date-of-birth as Sievert. Based on a review of the records, Sievert's phone has been associated with Sievert since October 2005 and Victim's phone has been associated with Sievert since approximately June 2012.

15. Based on a review of the I Wireless records, between July 2, 2012 and September 14, 2012, Sievert sent Victim over 11,000 SMS text messages. Based on the I Wireless documents, Sievert received over 9,000 SMS text messages from Victim.

16. On November 5, 2012, a search warrant was obtained for the text messages or electronic communications for the I Wireless account of "Mark Siebert", aka "Mark Sievert."

17. A review of the text messages contained in the I Wireless records revealed hundreds of text messages that are part of sexually explicit communications between Sievert's phone and the phone used by Victim (Victim's phone). The sexually explicit communications relate to anticipated sexual activity as well as comments after sexual activity.

18. On July 8, 2012, texts from Sievert's cell phone to the Victim's phone read, in pertinent part: "Yes alot do im just scared to go to jail i just want to lay and hold u right now and its not your fault u live with to horn dogs that talk about it all the time...And u know i want to wait til u r really ready and its going to probly hurt the first time."

19. On July 9, 2012, a text from Sievert's phone to Victim's phone reads: "Losing your virginity is a very big deal for u its sacride thing it has to b with the right person at the right time."

20. On July 16, 2012, a text from Sievert's phone reads, in part: "I love u and cant stop thinkin about u you dont regret lastnite do u...CAUSE I HURT U." The Victim's phone texts back: "yeah i knew u would but i didnt care an im fine it would happen sooner or later anyways an its ok it didnt hurt as bad as i thought it would so plz quit."

21. On July 17, 2012, a text from Sievert's phone, reads in part: "Want an akward questi+...Would u try other hole lol"..."Bj and swallow." A text from Victim's phone responds: "Maybe lol." A text is sent from Sievert's phone to Victim's phone: "And thats y i love u so much cause u try anything for me."

22. On July 25, 2012, a text from Sievert's cell phone: "So u ganna fuck me on sunday ha ha..."I want to try the butt and u swallow lol"..."And maybe ice lol unless u dont want to do any of those freak."

23. A review of the text messages contained in the I Wireless documents has determined there are also several discussions of Sievert requesting and directing the Victim to produce sexually explicit pictures of Victim and for the Victim to send Sievert the sexually explicit pictures. There are text messages in which Sievert directs Victim to produce and send sexually explicit videos of Victim masturbating.

24. On July 17, 2012, texts sent from Sievert's phone to victim's phone read, in part: "Where is my pic lol ... And I want to see a pic of my boob lol ...Go take a picof my boobie I miss it lol." Based on the records from I Wireless, a picture was received by Sievert on July 17, 2012. After receiving the picture, the following text messages are sent from Sievert's phone to Victim's phone: "Aw I love u that is a good pic thank u...Send me vag pic hun...Cant help it i want to see my babys body."

25. On July 19, 2012, text messages are sent from Sievert's phone to Victim's phone read, in part: "What i thought u were sending me a pic did u get mine...I sent u a pic of my weiner...I did now take a gond one for me freak...Good." Based on the records from I Wireless, a picture was received by Sievert's phone shortly after the aforementioned text communication. Subsequent to the aforementioned text communication, during an back-and forth series of texts, text messages were sent from Sievert's phone to Victim's phone that read, in part: "I jus got it lol y didnt u tell me u were freak i though u was playing a game let me look hold on...Omg i love u and y do u hate it and have u taken them before." Victim's phone responds: "um no lol i hate taking pics of places like that lol and idk y happy now freak help with your horniness." A response from Sievert's phone reads: "I love u so much for doing that i really really want to lick that."

26. On July 22, 2012, a text from Sievert's phone to Victim's phone reads: "I dare u to take a nauty pic open your vag and take it if u can sent text u can send pic did uget my

pic."

27. On July 24, 2012, a series of texts from Sievert's phone to Victim's phone reads: "DON'T MAKE IT AKWARD dont think about what your doing think about my dick inside u…Make yourself cum…Video it for me." Victim responds by sending Sievert a string of text messages that say: "I don't want u to get pissed at me but it sounds like u already are…The whole video thing um i don't exactly do thing like that an you'll probably leave me for it but i'm not the type who does that." Sievert then sends Victim a string of text messages that say: "We will work on that its ok…U didnt like pic either but u r gettin better…Did u cum."

28. On July 28, 2012, Sievert texts: "Send me a pic with your finger in your pussy please." The Victim responds by texting: "y." Sievert then texts: "Well u always say later when i ask for a pic i dont understand i see it in person i lick it i do other stuff with it im the time of person that liles pictures of stuff if thats a bad thing than i guess u dont have to be with a freak likee me ill understand…I like excitement sorry."

29. Based on the foregoing information, the affiant submits there is probable cause to believe Sievert utilized cellular telephones, which are facilities of interstate commerce, to persuade, induce, or entice, and attempt to do so, Victim, who had not yet attained the age of 18, to engage in sexually explicit conduct (for which Sievert can be charged with a criminal offense – third degree sexual assault) and did so for the purpose of producing visual depictions of such conduct in violation of Title 18, United States Code, Sections 2251(a) and 2422(b).

_____
Jeffrey S. Huber
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 16th day of November 2012.

_____
Thomas J. Shields
Chief United States Magistrate Judge